UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNIVERSAL BUILDING MAINTENANCE, LLC, and UNIVERSAL PROTECTION SERVICE, LP,<br><br>Plaintiffs,<br><br>v.<br><br>HAUSER HOLDINGS, LLC, BAJM HOLDINGS, LLC, K HOLDINGS, INC., MSP CAPITAL FUND-KNOXVILLE, LLC, WAG INVESTMENTS, LLC, WPK & ASSOCIATES, LLC, and MARY JANE HAUSER,<br><br>Defendants. | Case No. 3:23-cv-189 |

## COMPLAINT

Plaintiffs Universal Building Maintenance, LLC and Universal Protection Service, LP, by and through their counsel, and for their Complaint against Defendants Hauser Holdings, LLC, BAJM Holdings, LLC, K Holdings, Inc., MSP Capital Fund-Knoxville, LLC, WAG Investments, LLC, WPK & Associates, LLC, and Mary Jane Hauser (the "Complaint"), state as follows:

### I. PARTIES

1. Plaintiff Universal Building Maintenance, LLC ("UBM") is a limited liability company organized under the laws of California. All members of UBM are citizens of California and Delaware.

2. Plaintiff Universal Protection Service, LP ("UPS" and together with UBM, "Plaintiffs") is a limited partnership organized under the laws of California. All members of UPS are citizens of California, Delaware, Florida, and Virginia.

3. Defendant Hauser Holdings, LLC ("Hauser Holdings") is a limited liability company organized under the laws of Delaware. Upon information and belief, the members of Hauser Holdings are citizens of Minnesota. Hauser Holdings may be served with process through its registered agent, Allison F. Kern, at 50 South Sixth Street, Suite 1480, Minneapolis, Minnesota 55402.

4. BAJM Holdings, LLC n/k/a Black Swan Holdings, LLC ("BAJM Holdings") is a limited liability company organized under the laws of Tennessee. Upon information and belief, the members of BAJM Holdings are citizens of Tennessee. BAJM Holdings may be served with process through its registered agent, Walter N. Winchester, at 800 South Gay Street, Knoxville, Tennessee 37929.

5. K Holdings, Inc. ("K Holdings") is a corporation organized under the laws of Minnesota with its principal place of business located in Minneapolis, Minnesota. K Holdings may be served with process at 60 South Sixth Street, Suite 2630, Minneapolis, Minnesota 55402.

6. MSP Capital Fund-Knoxville, LLC ("MSP Capital") is a limited liability company organized under the laws of Minnesota. Upon information and belief, the members of MSP Capital are citizens of Minnesota. MSP Capital may be served with process at 8400 Normandale Lake Boulevard, Suite 920, Bloomington, Minnesota 55437.

7. WAG Investments, LLC ("WAG Investments") is a limited liability company organized under the laws of Minnesota. Upon information and belief, the members of WAG Investments are citizens of Minnesota. WAG Investments may be served with process at 6255 Farmington Avenue SE, Delano, Minnesota 55328.

8. WPK & Associates, LLC ("WPK & Associates") is a limited liability company organized under the laws of Minnesota. Upon information and belief, the members of WPK &

Associates are citizens of Minnesota. WPK & Associates may be served with process at 5508 Knoll Drive, Edina, Minnesota 55436.

9. Mary Jane Hauser ("Mary Hauser") was and is an individual domiciled within, and a citizen of, Minnesota and may be served with process at 60 South Sixth Street, Suite 2630, Minneapolis, Minnesota 55402.

10. Hauser Holdings, BAJM Holdings, K Holdings, MSP Capital, WAG Investments, WPK & Associates, and Mary Hauser are referred to collectively herein as "Defendants."

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This court has personal jurisdiction of Defendants by virtue of their transacting of business within the State of Tennessee and pursuant to Tenn. Code Ann. § 20-2-201.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants have significant contacts with the District both through their unlawful acts described herein and through their past business operations within the District.

## III. FACTUAL ALLEGATIONS

14. Plaintiffs incorporate the allegations of the proceeding paragraphs of the Complaint as if fully restated herein.

**A. The Prior Lawsuits**

15. On October 16, 2019, non-parties ERMC, LLC ("ERMC") and SecurAmerica LLC ("SecurAmerica" and together with ERMC, the "Servicers") commenced separate actions in the United States District Court for the Eastern District of Tennessee against Millertown Pavilion,

3

Case 3:23-cv-00189-KAC-DCP   Document 1   Filed 05/30/23   Page 3 of 15   PageID #: 3

LLC f/k/a Knoxville Partners, LLC ("Judgment Debtor"), styled as: (i) *ERMC LLC v. Millertown Pavilion LLC f/k/a Knoxville Partners, LLC*, Case No. 3:19-cv-00407, and (ii) *SecurAmerica LLC v. Millertown Pavilion LLC f/k/a Knoxville Partners, LLC*, Case No. 3:19-cv-408 (collectively, the "Lawsuits").

16. According to the trial court's findings, on October 7, 2016, Judgment Debtor entered into two service contracts, as subsequently amended (the "Agreements"), with non-party TriState Security of America, LLC d/b/a Russell Security ("TriState").

17. Per the terms of the Agreements, TriState agreed to provide certain security, janitorial, and maintenance services for the premises of Knoxville Center Mall, located at 3001 Knoxville Center Drive, Knoxville, Tennessee 37924 (the "Mall").

18. In exchange for TriState's services, Judgment Debtor agreed to pay TriState certain fees and costs in accordance with the Agreements.

19. Pursuant to that certain Assignment and Assumption Agreement, effective November 17, 2017, all rights, titles, and interests in and to the Agreements were assigned to ERMC or SecurAmerica.

20. Judgment Debtor was invoiced for the services provided by TriState, and later Servicers, on a monthly basis with payment terms of "net 15."

21. Between September 30, 2017, and August 29, 2019, TriState and Servicers, collectively, sent forty-seven invoices (the "Invoices") to Judgment Debtor for services they provided under the Agreements, but Judgment Debtor failed to make payment that was due on account of the Invoices.

22. In the aggregate, and after application of all offsets and credits due and owing, the services billed pursuant to the Invoices reflected a total amount of $439,746.63 owed by Judgment Debtor to ERMC and a total amount of $503,907.27 owed by Judgment Debtor to SecurAmerica.

23. In the Lawsuits, Servicers sued Judgment Debtor for breach of the Agreements in failing to pay due under the Invoices and sought to recover all past due amounts resulting from Judgment Debtor's breach.

24. Pursuant to that certain Omnibus Assignment and Assumption Agreement, effective March 10, 2021, all rights, titles, and interests in and to the assets of Servicers, including the Agreements, were assigned to Plaintiffs.

25. The Lawsuits were consolidated into one action, and the Court held a bench trial on March 16, 2021.

26. On September 30, 2021, a Final Judgment was entered in favor of Servicers and against Judgment Debtor (the "<u>Final Judgment</u>").  A true and correct copy of the Final Judgment is attached hereto as **Exhibit 1** and incorporated herein by reference.

27. The Final Judgment awarded damages to ERMC in the amount of $439,746.63 and to SecurAmerica in the amount of $503,907.27, plus Servicers' reasonable attorneys' fees as provided for in the Agreements.

28. On August 1, 2022, the trial court awarded Servicers their reasonable attorneys' fees and expenses against Judgment Debtor in the total amount of $113,721.78.  A true and correct copy of the Court's Memorandum and Order awarding Servicers their reasonable attorneys' fees and expenses is attached hereto as **Exhibit 2** and incorporated herein by reference.

29. On September 8, 2022, Servicers were awarded additional attorneys' fees and expenses against Judgment Debtor in the total amount of $3,500.00 as a result of Judgment

Debtor's failure to timely respond to certain post-judgment discovery requests. A true and correct copy of the Court's Agreed Order Granting in Part and Denying in Part Plaintiffs' Motion to Compel Responses to Interrogatories and Requests for Production of Documents awarding Servicers their reasonable attorneys' fees and expenses is attached hereto as **Exhibit 3** and incorporated herein by reference.

**B.   The Transfers**

30.   Judgment Debtor knew that it owed a debt to Servicers for the services they, and Tri-State, provided under the Agreements by no later than November 29, 2017, the date upon which Servicers were assigned TriState's interest in the Agreements.

31.   On or about May 4, 2020, Judgment Debtor entered into a transaction with Hillwood Enterprises, L.P. for the sale of the Mall in the approximate amount of $14,500,000.00 (the "Transaction").  A true and correct copy of the Agreement for Purchase and Sale of Property reflecting the Transaction is attached hereto as **Exhibit 4** and incorporated herein by reference.

32.   Upon information and belief, Hillwood Enterprises, L.P. transferred and assigned its interest in the Transaction with Judgment Debtor for the sale of the Mall to ET Knoxville, LLC, and the Transaction closed on or about March 11, 2021.

33.   As a result of the Transaction, and despite its knowledge that it owed money to Servicers, Judgment Debtor directed that certain portions of the Transaction sale proceeds totaling $6,962,506.29 be transferred to Defendants, and not to Servicers, as reflected in the Seller's Estimated Settlement Statement, dated March 10, 2021 (the "Settlement Statement").  A true and correct copy of the Settlement Statement is attached hereto as **Exhibit 5** and incorporated herein by reference.

34.     At all times relevant to this Complaint, Defendants were either directors, officers, or persons in control of Judgment Debtor, and/or a relative of a director, officer, or person in control of the Judgment Debtor.

35.     On or about March 11, 2021, the Judgment Debtor, either directly or indirectly, caused the following transfers to be made to Defendants by wire transfer on account of their membership in Judgment Debtor, as reflected in the Settlement Statement:

| Transferee | Amount |
|---|---|
| Hauser Holdings | $280,030.00 |
| BAJM Holdings | $137,517.50 |
| K Holdings | $125,005.00 |
| MSP Capital | $1,600,000.00 |
| WAG Investments | $2,450,000.00 |
| WPK & Associates | $300,000.00 |
| Mary Hauser | $300,000.00 |
| **Total:** | **$5,192,552.50** |

(the "Equity Transfers").  *See* Exh. 5.

36.     Specifically, the Settlement Statement reflects the Equity Transfers as follows:

*Seller's Estimated Settlement Statement*
*Amended: Wednesday Mar 10, 2021  11:09 AM*

Settlement Date:  
Officer: Cathy Moeller/SS  
File No: 1002-296727-RTT

| Description | Seller Charge | Seller Credit |
|---|---|---|
| **Disbursements Paid** | | |
| **Miscellaneous Disbursement** | | |
| 2019 and 2020 County Real Property Taxes to Knox County Trustee | 254,216.32 | |
| 2019 and 2020 City Real Property Taxes to City of Knoxville | 331,582.39 | |
| Fees to Patrick King | 15,000.00 | |
| Utilities to KUB | 187,408.72 | |
| Architectural Fees to COR3 | 5,296.10 | |
| Engineering Fees to Hodge Engineering | 2,130.00 | |
| Return of Equity to WAG Investments LLC | 2,450,000.00 | |
| Return of Equity to MSP Capital LLC | 1,600,000.00 | |
| Return of Equity to WPK & Associates LLC | 300,000.00 | |
| Return of Equity to Mary Jane Hauser | 300,000.00 | |
| Return of Equity to K Holdings, Inc. | 125,005.00 | |
| Return of Equity to Hauser Holdings | 280,030.00 | |
| Repayment of Notes to Hauser Holdings | 1,614,203.79 | |
| Return of Equity to Black Swan Holdings, LLC | 137,517.50 | |
| Repayment of Notes to Black Swan Holdings, LLC | 155,750.00 | |
| Insurance Premium to CSU Producer Resources, Inc. | 4,474.52 | |
| Development & Management Fee to Capital Real Estate, Inc. | 419,612.08 | |
| **Real Estate Broker Charges** | | |
| Management and Consulting Fees to Avison Young | 80,000.00 | |
| **Totals** | **14,500,000.00** | **14,500,000.00** |

Exh. 5, at 2.

7

37. In addition, on or about March 11, 2021, the Judgment Debtor, either directly or indirectly, caused the following transfers to be made to Hauser Holdings and BAJM Holdings by wire transfer on account of notes payable by Judgment Debtor, as reflected in the Settlement Statement:

| Transferee | Amount |
|---|---|
| Hauser Holdings | $1,614,203.79 |
| BAJM Holdings | $155,750.00 |
| **Total:** | **$1,769,953.79** |

(the "Debt Transfers" and with the Equity Transfers, the "Transfers"). *See* Exh. 5.

38. The Transfers rendered the Judgment Debtor insolvent, as Judgment Debtor's debts were in excess of the fair market value of Judgment Debtor's assets.

39. Despite multiple demands, Judgment Debtor has failed or refused to satisfy the Final Judgment in whole or in part.

40. Specifically, since entry of the Final Judgment, Servicers have requested, by and through counsel, on numerous occasions that Judgment Debtor satisfy the debt. Judgment Debtor has consistently responded that it has no assets to satisfy the Final Judgment.

## COUNT I
## FRAUDULENT TRANSFER (T.C.A. § 66-3-305(a)(1))

41. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

42. Plaintiffs, as assignee of Servicers, and in accordance with the trial court's Final Judgment, held claims against Judgment Debtor prior to the Equity Transfers.

43. Judgment Debtor made the Equity Transfers to Defendants, as evidenced by the Settlement Statement.

44. The Equity Transfers were made with the actual intent to hinder, delay, or defraud Servicers and/or Plaintiffs.

45. The Equity Transfers were made to Defendants, each of which is an insider of the Judgment Debtor, in the same month that the underlying case went to trial (i.e. months after the Servicers had filed suit against Judgment Debtor).

46. As reflected on the Settlement Statement, the Equity Transfers represent substantially all of Judgment Debtor's unencumbered assets, and thus, Judgment Debtor was insolvent or became insolvent shortly after the Equity Transfers were made. The Equity Transfers occurred shortly before the Final Judgment was rendered against Judgment Debtor, finding Judgment Debtor liable on account of the Invoices in the collective amount of $943,653.90 plus Servicers' reasonable attorneys' fees.

47. Accordingly, pursuant to T.C.A. § 66-3-308 and § 66-3-309(b), Plaintiffs are entitled to avoidance of the Equity Transfers and judgment for the value of the Equity Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less.

**COUNT II**
**FRAUDULENT TRANSFER (T.C.A. § 66-3-305(a)(2))**

48. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

49. Plaintiffs, as assignees of Servicers, held claims against Judgment Debtor prior to the Equity Transfers.

50. Judgment Debtor made the Equity Transfers to Defendants on account of their membership interests in Judgment Debtor.

51. The Equity Transfers were made without Judgment Debtor receiving reasonably equivalent value in exchange for the transfer or obligation and were solely the result of Judgment Debtor's sale of the Mall.

52. The Settlement Statement and Judgment Debtor's 2021 federal income tax return reflect that the Equity Transfers were made on account of Defendants' "Equity" interest in Judgment Debtor. *See* Exh. 5. Accordingly, the Equity Transfers constitute distributions of profits in Judgment Debtor's business, not compensation, and as such, no value was provided by Defendants to Judgment Debtor on account of the Equity Transfers.

53. Judgment Debtor intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due because Judgment Debtor terminated its ongoing business operations by selling the Mall, made the Equity Transfers and other transfers reflected in the Settlement Statement, and reserved no portion of the sale proceeds from the Mall to satisfy Servicers' claims that were reduced to a Final Judgment.

54. Judgment Debtor knew at the time that it made the Equity Transfers that Judgment Debtor was subject to the claims of Servicers and such claims had been reduced to Final Judgment.

55. Plaintiffs are the assignees of Servicers' claims, and as such, Plaintiffs are the real parties in interest in this action.

56. Accordingly, pursuant to T.C.A. § 66-3-308 and § 66-3-309(b), Plaintiffs are entitled to avoidance of the Equity Transfers and judgment for the value of the Equity Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less.

<u>**COUNT III**</u>
**FRAUDULENT TRANSFER (T.C.A. § 66-3-306(a))**

57. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

58. Plaintiffs, as assignees of Servicers, held claims against Judgment Debtor prior to the Equity Transfers.

59. Judgment Debtor made the Equity Transfers to Defendants.

60. The Equity Transfers were made without Judgment Debtor receiving reasonably equivalent value in exchange for the transfer or obligation and were solely the result of the Judgment Debtor's sale of the Mall.

61. The Settlement Statement and Judgment Debtor's 2021 federal income tax return reflect that the Equity Transfers were made on account of Defendants' "Equity" interest in Judgment Debtor. Accordingly, the Equity Transfers constitute distributions of profits in Judgment Debtor's business, not compensation, and as such, no value was provided by Defendants to Judgment Debtor on account of the Equity Transfers.

62. Judgment Debtor was either insolvent at the time the Equity Transfers were made or became insolvent as a result of the Equity Transfers because Judgment Debtor's debts were in excess of the fair market value of Judgment Debtor's assets.

63. Plaintiffs are the assignees of Servicers' claims, and as such, Plaintiffs are the real parties in interest in this action.

64. Accordingly, pursuant to T.C.A. § 66-3-308 and § 66-3-309(b), Plaintiffs are entitled to avoidance of the Equity Transfers and judgment for the value of the Equity Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less.

## COUNT IV
## FRAUDULENT TRANSFER (T.C.A. § 66-3-306(b))

65. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

66. Plaintiffs, as assignees of Servicers, held claims against Judgment Debtor prior to the Debt Transfers.

67. Judgment Debtor made the Debt Transfers to Hauser Holdings and BAJM Holdings.

68. Hauser Holdings and BAJM Holdings are insiders of Judgment Debtor based upon Judgment Debtor's 2021 federal income tax return.

69. The Debt Transfers were made to Hauser Holdings and BAJM Holdings on account of an antecedent debt because the Settlement Statement reflects that the Debt Transfers were made as repayment of notes to Hauser Holdings and BAJM Holdings. *See* Exh. 5.

70. At the time the Debt Transfers were made, Judgment Debtor was insolvent, and Hauser Holdings and BAJM Holdings had reasonable cause to believe that Judgment Debtor was insolvent because Judgment Debtor's debts were in excess of the fair market value of Judgment Debtor's assets based upon the valuations listed in Judgment Debtor's 2021 federal income tax return.

71. Plaintiffs are the assignees of Servicers' claims, and as such, Plaintiffs are the real parties in interest in this action.

72. Accordingly, pursuant to T.C.A. § 66-3-308 and § 66-3-309(b), Plaintiffs are entitled to avoidance of the Debt Transfers and judgment for the value of the Debt Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less.

## COUNT V
### INJUNCTIVE RELIEF (T.C.A. § 66-3-308(a)(3)(A))

73. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

74. Defendants continue to possess and utilize, or are capable of utilizing, the fraudulently transferred funds.

75. The absence of an injunction would allow Defendants to dissipate or hide any remaining fraudulently transferred funds held by Defendants, thus depriving Plaintiffs of any equitable remedy and causing Plaintiffs irreparable harm.

76. The threat of further and irreparable harm to Plaintiffs' ability to recover on the Final Judgment, namely through the continued improper concealment and/or dissipation of the only remaining assets capable of providing said recovery, outweighs any potential harm to Defendants posed by the "threat" of having to pay a judgment debt.

77. Plaintiffs are likely to succeed on the merits of their fraudulent transfer claims because the Transfers rendered the Judgment Debtor insolvent or otherwise incapable of satisfying its remaining obligations, and the Transfers were made over fourteen months after litigation had been commenced against Judgment Debtor.

78. Plaintiffs will be subjected to immediate and irreparable harm unless Defendants, and all persons or firms acting in concert therewith or otherwise having knowledge of the injunction, are enjoined from all further acts to conceal, transfer, dispose of, or otherwise use any of the fraudulently transferred funds and any assets purchased or otherwise acquired, whether in whole or in part, using the fraudulently transferred funds.

79. In short, because the sale transaction and resulting Transfers rendered the Judgment Debtor without any remaining assets, the Transfers represent the only means of recovery on the Final Judgment. Should Defendants be permitted to use the fraudulently transferred funds, Plaintiffs will have no recourse and no means of collecting on the Final Judgment.

80. Accordingly, pursuant to T.C.A. § 66-3-308(a)(3)(A) and Federal Rule of Civil Procedure 65, Plaintiffs are entitled to an injunction against further disposition of the fraudulently transferred funds by the Defendants.

## COUNT VI
## ATTORNEYS' FEES AND EXPENSES

81. Plaintiffs incorporate the allegations contained in the preceding paragraphs as though fully stated herein.

82. The Agreements provide that the prevailing party is entitled to reimbursement of its attorneys' fees and expenses for any fees incurred in enforcing the terms of the Agreements.

83. As the trial court determined, Judgment Debtor violated the terms of the Agreements.

84. Plaintiffs reduced their claims arising under the Agreements to judgment and were awarded their reasonable attorneys' fees.

85. This case is a continuation of Plaintiffs' efforts, as the lawful assignees of Servicers under the Agreements, to enforce the terms of these Agreements.

86. Plaintiffs have engaged counsel to represent their interests here and will continue to incur additional attorneys' fees and expenses as a result of these efforts.

87. Accordingly, Plaintiffs are entitled to recover their attorneys' fees and expenses in accordance with the Agreements, as permitted by applicable law.

**WHEREFORE**, Plaintiffs pray for the following relief:

A. That process issue upon Defendants, and Defendants be required to answer or otherwise respond to this Complaint within the time provided by law;

B. That Plaintiffs be awarded judgment against Defendants for the value of the Equity Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less;

C. That Plaintiffs be awarded judgment against Hauser Holdings and BAJM Holdings for the value of the Debt Transfers or the amount necessary to satisfy Plaintiffs' claims, whichever is less;

D. That Defendants be enjoined from disposing of the funds transferred to Defendants by Judgment Debtor;

E. That Plaintiffs be awarded their attorneys' fees and expenses;

F. Pre-judgment and post-judgment interest, to the maximum extent permitted by law;

G. That all costs in this action be taxed to Defendants; and

H. For such other and further relief as the Court deems appropriate.

Dated: May 30, 2023.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Ryan A. Burgett*
K. Chris Collins | TN Bar No. 029109
Ryan A. Burgett | TN Bar No. 033641
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
(423) 266-5500
(423) 266-5499 (fax)
Chris.Collins@huschblackwell.com
Ryan.Burgett@huschblackwell.com

*Attorneys for Universal Building Maintenance, LLC and Universal Protection Service, LP*